Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Laura E. Goolsby (SBN 321721)
Laura.Goolsby@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiff Raymond Flores

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND FLORES,<br><br>       Plaintiff,<br><br>    v.<br><br>TESLA, INC., d/b/a TESLA MOTORS, INC., a Delaware Corporation,<br><br>       Defendant. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>(1)  Violations of California Civil Code, §§ 1750 *et seq.* (California Consumer Legal Remedies Act — Injunctive Relief Only);<br><br>(2)  Violations of California Unfair Competition Law, §§ 17500 *et seq.* (False Advertising Law — Injunctive Relief Only);<br><br>(3)  Violations of California Business & Professions Code §§ 17200 *et seq.* (Unfair Business Practices – Injunctive Relief Only);<br><br>(4)  Violations of California Business & Professions Code, §§ 17200 *et seq.* (Unlawful Business Practices– Injunctive Relief Only);<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.    This case arises out of Tesla Inc. d/b/a Tesla Motors, Inc.'s ("Defendant" or "Tesla") unfair and deceptive marketing of its electric vehicles' mileage range.  Specifically, Plaintiff seeks to compel Tesla to disclose to the public that, with respect to Tesla Model 3, S, Y and X (collectively the "Tesla Vehicles"): (1) Tesla's advertised total mileage range for the Tesla Vehicles is based on charging the Vehicle to 100%, but Tesla discourages charging its vehicles to 100%; therefore, Tesla's advertised mileage range for the Tesla Vehicles is misleading; (2) the range of the Tesla Vehicles can drop by up to 50% in cold weather, compared to advertised ranges; and (3) that the ranges of the Tesla Vehicles were not estimated based on U.S. Environmental Protection Agency ("EPA") standardized formulae— despite Tesla advertising the range estimates as "EPA estimates"—but instead based on Tesla's own proprietary software method and algorithms for calculating range, which allowed for a more aggressive estimate of total electric vehicle range.

2.    Tesla advertises its vehicles to the general purchasing public, and the public is harmed because Tesla advertises exaggerated driving ranges of its electric vehicles.

3.    In or around June 2023, Plaintiff Raymond Flores ("Plaintiff") purchased a new 2023 Tesla Model Y vehicle designed, manufactured, marketed, distributed, sold, and warranted by Tesla.  Tesla representatives had told him to expect a mileage range of 325 miles, which is also the number advertised on Tesla's website.  A 325 mile range was Plaintiff's main reason for purchasing a Tesla instead of other EV vehicles.  However, since purchasing, Plaintiff has not gotten any more than 250 miles on a full charge, which is about 75 miles (or roughly 23%) less than advertised.  When Plaintiff complained to Tesla about the low mileage in or around July 2023, Tesla representatives told him that it would eventually get better.  However, the range has not improved over time.

4.     As a result of Tesla's business practices described herein, Plaintiff has suffered an ascertainable loss of time and money due to purchase of a vehicle based on Tesla's misleading and deceptive marketing of its vehicles' mileage in that he would not have purchased this vehicle or would have paid less for it, had Tesla not acted as alleged herein.  Accordingly, Plaintiff has standing to seek public injunctive relief.

5.     The reduced range of the vehicle has impacted Plaintiff's cost of operating the vehicle in various ways. Plaintiff has had to charge the vehicle more frequently, leading to increased electricity costs over time. With its reduced range, Plaintiff's vehicle has depreciated and will continue to depreciate in value faster than those that maintain a longer range. The vehicle's reduced range has also caused "range anxiety," where Plaintiff is constantly concerned about running out of battery before reaching his destination. This has caused him to take longer routes to ensure he passes by charging stations or avoids certain trips altogether. These longer routes have caused increased monetary costs.

## JURISDICTION AND VENUE

6.     This action is brought by Plaintiff individually, as a consumer in California. The value of injunctive relief sought by Plaintiff exceeds the minimal jurisdiction limits of the Superior Court and will be established according to proof at trial.

7.     Tesla, through its business of distributing, selling, and leasing the Tesla Vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate. Tesla is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

8.     This Court has personal jurisdiction over Tesla because it has consented to jurisdiction by registering to conduct business in the state; maintains sufficient minimum contacts in California; and otherwise intentionally avails itself of the markets within California through promotion, sale, marketing and distribution

COMPLAINT

of its vehicles, which renders the exercise of jurisdiction by this Court proper and necessary.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)-(c). A substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

10.     Plaintiff Raymond Flores is a California citizen who resides in Bakersfield, California in Kern County, California. On or around June 29, 2023, Plaintiff purchased his 2023 Tesla Model Y online from Tesla's website and picked up the vehicle from Tesla's location in Fresno, California, located at 2988 North Burl Avenue, Fresno, CA 93727 on or around June 30, 2023.

11.     Tesla Motors, Inc. was and is, upon information and belief, a corporation organized and in existence under the laws of the State of Delaware and conducts business in the State of California.

12.     At all relevant times, Tesla was and is engaged in the business of designing, manufacturing, marketing, distributing, selling, leasing, and warrantying Tesla-branded vehicles in California, and throughout the United States of America.

## FACTUAL ALLEGATIONS

13.     Tesla designs and manufactures electric vehicles that are advertised and sold to the general public, including millions of consumers in California and nationwide.

14.     On July 27, 2023, Reuters published a Special Report entitled "Tesla Created Secret Team to Suppress Thousands of Driving Range Complaints" in which it asserted that "Tesla years ago began exaggerating its vehicles' potential driving distance – by rigging their range-estimating software. The company decided about a decade ago, for marketing purposes, to write algorithms for its range meter that would show drivers 'rosy' projections for the distance it could travel on a full

battery, according to a person familiar with an early design of the software for its in-dash readouts.  Then, when the battery fell below 50% of its maximum charge, the algorithm would show drivers more realistic projections for their remaining driving range, this person said.  To prevent drivers from getting stranded as their predicted range started declining more quickly, Tesla vehicles were designed with a "safety buffer," allowing about 15 miles (24 km) of additional range even after the dash readout showed an empty battery, the source said."[1]

15.    According to Reuters, the directive to present the optimistic range estimates came from Tesla Chief Executive Officer Elon Musk, this person said. "Elon wanted to show good range numbers when fully charged," the person said, adding: "When you buy a car off the lot seeing 350-mile, 400-mile range, it makes you feel good."[2]

16.    The Reuters Special Report states that, according to Reuters' interviews with three automotive experts who have tested or studied the Tesla's vehicles, the Tesla Vehicles often fail to achieve their advertised range estimates and the projections provided by the cars' own equipment.[3]

17.    Tesla Vehicles provide range estimates in real-time. The intention is to provide the driver with contemporaneous updates on the electric vehicle battery's performance, which directly correlate to the range the vehicle can be driven. Generally, accurate range estimates help to ensure that, as the battery drains, the driver knows to pull over at a charging station before the battery drains completely, leaving the driver and occupants stranded. Inaccurate range estimates can, indeed, lead a driver to being stranded, as the battery drains completely—and unexpectedly, based upon inaccurate range information.

---

[1] Reuters, "Tesla created secret team to suppress thousands of driving range complaints" available at: https://www.reuters.com/investigates/special-report/tesla-batteries-range/ (last accessed, Nov. 13, 2023).

[2] *Id.*

[3] *Id.*

COMPLAINT

18.    Tesla vehicles provide range estimates in two ways. First, through a meter on the screen that is always displayed. This meter can be toggled to indicate either the electric vehicle battery percentage remaining or the range (measured in miles or kilometers) remaining.  Second, through the vehicle's navigation system, which estimates the range (indicated in battery percentage) remaining, as compared to the set destination. However, if no destination is inputted into the navigation system, the vehicle will not indicate a range estimate through this second method.

19.    Following purchase, each Tesla Vehicle sets a suggested charge limit—that is, an upper limit to stop charging the battery. For example, if an 80% limit is set, the battery will continue to charge until it reaches 80% capacity, then will stop charging. This effectively ensures that the battery cannot be fully charged to 100%.  A consumer can manually override the charge limit. However, Tesla recommends that consumers not exceed the suggested charge limit. Tesla specifically suggests that consumers "[c]harge the battery to the appropriate charge limit for your vehicle based on the installed battery."[4]  Tesla suggests that Tesla owners should charge their vehicle to full 100% capacity only sparingly.

20.    Setting charge limits directly impacts total range. Tesla's advertised total range of its vehicles are based on a full charge. However, because Tesla discourages owners from ever charging their vehicles to 100%, it is increasingly difficult—if not impossible—to ever reach that advertised range. For example, setting the vehicle's charge limit at 80% can reduce the total range by hundreds of miles, compared to the advertised range. Based upon Tesla's suggested charge limits, Tesla vehicles cannot reach the total ranges Tesla advertises. Notably, while Tesla openly advertises its total range estimates (which already are exaggerated) to consumers at the point of purchase, it does not indicate to consumers that they can expect to limit the vehicle's total range by setting charge limits.

---

[4] Tesla, "Range Tips" available at:
https://www.tesla.com/support/range#:~:text=Charge%20the%20battery%20to%20the,app%20and%20drag%20the%20slider. (last accessed, Nov. 13, 2023).

21.      Moreover, Tesla exaggerates its Vehicles' range.  Electric cars can lose driving range for a lot of the same reasons as gasoline cars, but to a greater degree.[5] The cold is a particular drag on EVs, slowing the chemical and physical reactions inside their batteries and requiring a heating system to protect them.[6]  Reuters reported that data collected in 2022 and 2023 from more than 8,000 Tesla Vehicles by Recurrent, a Seattle-based EV analytics company, showed that the vehicles' dashboard range meters did not change their estimates to reflect hot or cold outside temperatures, which can greatly reduce range.[7] Recurrent found that Tesla's four models almost always calculated that they could travel more than 90% of their advertised EPA range estimates regardless of external temperatures.[8]

22.      Indeed, in 2023, the Korea Fair Trade Commission ("KFTC") cited Tesla for false advertising for this omission.[9]  The KFTC found that Tesla failed to tell customers that cold weather can drastically reduce its cars' range.[10] It cited tests by the country's environment ministry that showed Tesla cars lost up to 50.5% of the company's claimed ranges in cold weather.[11] The KFTC also flagged certain statements on Tesla's website, including one that claimed about a particular model: "You can drive 528 km (328 miles) or longer on a single charge."[12] Regulators required Tesla to remove the "or longer" phrase and publicly admit it had misled consumers.[13] Musk and two local executives did so in a June 19 statement,

---

[5] *See supra* note 1.

[6] *See supra* note 1.

[7] *See supra* note 1.

[8] *See supra* note 1.

[9] *See supra* note 1.

[10] *See supra* note 1.

[11] *See supra* note 1.

[12] *See supra* note 1.

[13] *See supra* note 1.

acknowledging "false/exaggerated advertising."[14] South Korean regulators also fined Tesla about $2.1 million for falsely advertised driving ranges on its local website between August 2019 and December 2022.[15]

23.    Like their gas-powered counterparts, new electric vehicles are required by U.S. federal law to display a label with fuel-efficiency information.[16] In the case of EVs, this is stated in miles-per-gallon equivalent (MPGe), allowing consumers to compare them to gasoline or diesel vehicles.[17] The labels also include estimates of total range: how far an EV can travel on a full charge, in combined city and highway driving.[18]

24.    EV makers have a choice in how to calculate a model's range.[19] They can use a standard EPA formula that converts fuel-economy results from city and highway driving tests to calculate a total range figure.[20] Or, automakers can conduct additional tests to come up with their own range estimate.[21] The only reason to conduct more tests is to generate a more favorable estimate, said Gregory Pannone, a retired auto-industry veteran cited by Reuters.[22] Pannone coauthored a study of 21 different brands of electric vehicles, published in April 2023 by SAE International, an engineering organization.[23] The research found that, on average, the cars fell short of their advertised ranges by 12.5% in highway driving.[24] Pannone

---

[14] *See supra* note 1.

[15] *See supra* note 1.

[16] *See supra* note 1.

[17] *See supra* note 1.

[18] *See supra* note 1.

[19] *See supra* note 1.

[20] *See supra* note 1.

[21] *See supra* note 1.

[22] *See supra* note 1.

[23] *See supra* note 1.

[24] *See supra* note 1.

COMPLAINT

told Reuters that three Tesla models posted the worst performance, falling short of their advertised ranges by an average of 26%.[25]

25. Tesla does not use EPA's standardized formula for any of its Vehicles. Instead, Tesla conducts its own additional range tests on all of its models, resulting in inflated estimates compared to the ranges drivers actually experience.[26]

26. By contrast, many other automakers, including Ford, Mercedes and Porsche, continue to rely on the EPA's standardized formula to calculate potential range, according to agency data for 2023 models.[27] Doing so ensures that the potential range advertised to consumers reflects more conservative estimates based on real-world driving conditions, Pannone said.[28]

27. Jonathan Elfalan, vehicle testing director for the automotive website Edmunds.com, conducted an extensive examination of vehicles from Tesla and other major automakers, including Ford, General Motors, Hyundai and Porsche.[29] All five Tesla models tested by Edmunds failed to achieve their advertised range, the website reported in February 2021.[30] All but one of 10 other models from other manufacturers exceeded their advertised range.[31] Tesla complained to Edmunds that the test failed to account for the safety buffer programmed into Tesla's in-dash range meters.[32] So, Edmunds did further testing, this time running the vehicles, as Tesla requested, past the point where their range meters indicated the batteries had run out.[33]

---

[25] *See supra* note 1.

[26] *See supra* note 1.

[27] *See supra* note 1.

[28] *See supra* note 1.

[29] *See supra* note 1.

[30] *See supra* note 1.

[31] *See supra* note 1.

[32] *See supra* note 1.

[33] *See supra* note 1.

COMPLAINT

28.     Only two of six Tesla vehicles tested matched their advertised range, Edmunds reported in March 2021.[34] The tests found no fixed safety buffer.[35] Edmunds has continued to test electric vehicles, using its own standard method, to see if they meet their advertised range estimates.[36] As of July, no Tesla vehicle had met their own advertised range estimates, Elfalan said.[37] "They've gotten really good at exploiting the rule book and maximizing certain points to work in their favor involving EPA tests…[t]he practice can "misrepresent what their customers will experience with their vehicles," Elfalan told Reuters.[38]

29.     Recurrent also tested other automakers' in-dash range meters – including the Ford Mustang Mach-E, the Chevrolet Bolt and the Hyundai Kona – and found them to be more accurate.[39] The Kona's range meter generally underestimated the distance the car could travel, the tests showed.[40] Recurrent conducted the study with the help of a National Science Foundation grant.[41] Tesla, Case said, has consistently designed the range meters in its cars to deliver aggressive rather than conservative estimates: "That's where Tesla has taken a different path from most other automakers."[42]

30.     To address an overwhelming number of customer complaints regarding driving range and requests for service appointments to address the issue, in the summer of 2022, Tesla created a "Diversion Team" in Las Vegas to handle only range cases, according to the people familiar with the matter, as cited by

---

[34] *See supra* note 1.

[35] *See supra* note 1.

[36] *See supra* note 1.

[37] *See supra* note 1.

[38] *See supra* note 1.

[39] *See supra* note 1.

[40] *See supra* note 1.

[41] *See supra* note 1.

[42] *See supra* note 1.

COMPLAINT

Reuters.[43] Diversion Team employees were instructed to thwart any customers complaining about poor driving range from bringing their vehicles in for service and to cancel as many range-related appointments as possible.[44]

31.     Advisers would normally run remote diagnostics on customers' cars and try to call them, the people said.[45] They were trained to tell customers that the EPA-approved range estimates were just a prediction, not an actual measurement, and that batteries degrade over time, which can reduce range.[46] Advisors would offer tips on extending range by changing driving habits.[47] If the remote diagnostics found anything else wrong with the vehicle that was not related to driving range, advisors were instructed not to tell the customer, one of the sources said.[48] Managers told them to close the cases.[49]

32.     Tesla also updated its phone app so that any customer who complained about range could no longer book service appointments, one of the sources said.[50] Instead, they could request that someone from Tesla contact them.[51] It often took several days before owners were contacted because of the large backlog of range complaints, the source said.[52]

33.     The app update also routed all U.S. range complaints to the Nevada diversion team, which started in Las Vegas and later moved to the nearby suburb of

---

[43] *See supra* note 1.

[44] *See supra* note 1.

[45] *See supra* note 1.

[46] *See supra* note 1.

[47] *See supra* note 1.

[48] *See supra* note 1.

[49] *See supra* note 1.

[50] *See supra* note 1.

[51] *See supra* note 1.

[52] *See supra* note 1.

COMPLAINT

Henderson.[53] The team was soon fielding up to 2,000 cases a week, which sometimes included multiple complaints from customers frustrated they couldn't book a service appointment, one of the people said.[54]

34.     The team was expected to close about 750 cases a week.[55] To accomplish that, office supervisors told advisers to call a customer once and, if there was no answer, to close the case as unresponsive, the source said.[56] When customers did respond, advisers were told to try to complete the call in no more than five minutes.[57]

35.     In late 2022, managers aiming to quickly close cases told advisors to stop running remote diagnostic tests on the vehicles of owners who had reported range problems, according to one of the people familiar with the diversion team's operations.[58] "Thousands of customers were told there is nothing wrong with their car" by advisors who had never run diagnostics, the person said.[59] Reuters could not establish how long the practice continued. [60]

36.     Tesla recently stopped using its diversion team in Nevada to handle range-related complaints, according to the person familiar with the matter.[61] Virtual service advisors in an office in Utah are now handling range cases, the person said.[62] Reuters could not determine why the change was made.[63]

---

[53] *See supra* note 1.

[54] *See supra* note 1.

[55] *See supra* note 1.

[56] *See supra* note 1.

[57] *See supra* note 1.

[58] *See supra* note 1.

[59] *See supra* note 1.

[60] *See supra* note 1.

[61] *See supra* note 1.

[62] *See supra* note 1.

[63] *See supra* note 1.

37.    Tesla was aware that its advertised electric vehicle ranges for the Tesla Vehicles were exaggerated and exceeded the actual range of the vehicle when driven in real-world driving conditions. Tesla, which employs its own proprietary method for calculating the range of its electric vehicles, was aware that this method of calculation produced aggressive and exaggerated range estimates. Further, Tesla was aware that various driving and environmental factors negatively impacted the electric vehicle's range and that these factors were likely to occur in real-world driving conditions.

38.    Nevertheless, despite knowing this, Tesla did not inform consumers of this information when advertising their electric vehicle range estimates. For example, Tesla could have warned potential purchasers that cold weather would drastically lower the electric vehicle's range, but Tesla did not issue such a warning, instead only advertising an exaggerated range estimate.

39.    Tesla also was aware that its advertised range estimates were based on driving the electric vehicle with a full 100% charge of the electric vehicle battery. However, because Tesla suggests to customers that they establish a charge limit on their vehicles well-below full capacity, Tesla was aware that, in reality, customers would be unable to ever actually experience the full advertised range. Tesla should have warned potential purchasers that the ranges of the Tesla Vehicles could be negatively impacted by various driving and environmental factors that were likely to exist; but Tesla did not.

40.    Tesla should have warned potential purchasers that the ranges of the Tesla Vehicles were estimated based on full 100% battery charge, but that Tesla suggested that its model vehicles not be charged to full 100% battery charge on a regular basis.

41.    Tesla should have warned potential purchasers that the ranges of the Tesla Vehicles were not estimated based on EPA standardized formulae—despite Tesla advertising the range estimates as "EPA estimates"—but instead based on

Tesla's own proprietary method and algorithms for calculating range, which allowed for a more aggressive estimate of total electric vehicle range.

42.    Tesla's conduct in falsely advertising its estimated vehicle ranges harmed Plaintiff at the point of sale and continues to harm members of the general public.

## FIRST CAUSE OF ACTION
### Violation of California Civil Code § 1750, *et seq*.
### (California Consumer Legal Remedies Act—Injunctive Relief Only)

43.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

44.    Plaintiff brings this cause of action on behalf of himself and the general California public.

45.    Tesla is a "person" as defined by California Civil Code § 1761(c).

46.    Plaintiff is a "consumer" within the meaning of California Civil Code § 1761(d) because he purchased his Tesla Vehicle primarily for personal, family, or household use.

47.    The Consumers Legal Remedies Act ("CLRA") prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).

48.    By misrepresenting the actual driving range for the Tesla Vehicles to Plaintiff and the general public, Tesla violated California Civil Code § 1770(a), as it represented that the Tesla Vehicles had characteristics and benefits that they do not have, represented that the Tesla Vehicles and their driving rage were of a particular standard, quality, or grade when they were actually of another, and advertised goods or services with the intent not to sell them as advertised. *See* Cal. Civ. Code §§ 1770(a)(5) (7) & (9).

49. Tesla's unfair and deceptive acts or practices occurred repeatedly in Tesla's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

50. Tesla knew that the Tesla Vehicles were incapable of reaching the actual advertised and represented range.

51. As a result of their reliance on Tesla's misrepresentations and omissions, owners and/or lessees of the Tesla Vehicles, including Plaintiff, suffered an ascertainable loss of money, property, and/or value of their Tesla Vehicles.

52. Tesla was under a duty to Plaintiff and the general public to disclose the actual driving range of the Tesla Vehicles because:

    a. Tesla was in a superior position to know the true state of facts about the Tesla Vehicles' driving range;

    b. Plaintiff and the general public could not reasonably have been expected to learn or discover that their vehicles could never reach the advertised and represented range; and

    c. Tesla knew that Plaintiff and the general public could not reasonably have been expected to learn of or discover Tesla's misrepresentations until after purchasing their Tesla Vehicles.

53. In misrepresenting the range of the Tesla Vehicles, Tesla knowingly and intentionally misrepresented and concealed material facts and breached its duty not to do so.

54. The facts Tesla misrepresented, concealed from, or failed to disclose to Plaintiff and the general public are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Tesla Vehicles or pay less. Had Plaintiff known that the Tesla Vehicles' were incapable of reaching the represented and advertised range, he would not have purchased or leased the Tesla Vehicle or would have paid less for it.

55.     Plaintiff is a reasonable consumer who does not expect the Tesla Vehicle to fail to reach the represented and advertised range. This is the reasonable and objective consumer expectation relating to a Tesla Vehicle's advertised range.

56.     Plaintiff is therefore entitled to, and does, seek injunctive relief pursuant to California Civil Code section 1780(a)(2) to "enjoin the methods, acts or practices" that violate section 1770. Specifically, Plaintiff seeks public injunctive relief enjoining Tesla's unfair or deceptive acts or practices to prevent future injury to the general public. In addition, Plaintiff seeks an award of attorneys' fees and costs under California Civil Code section 1780(e), and orders granting all similar relief available.

## SECOND CAUSE OF ACTION
**(Violation of California Business & Professions Code §§ 17500,** *et seq***.)**
**(False Advertising Law – Injunctive Relief Only)**

57.     Plaintiff incorporates by reference the allegations contained in each and every paragraph of this Complaint.

58.     Tesla is a "person" as defined by California Business & Professions Code sections 17201, as it is a corporation, firm, partnership, joint stock company, and/or association.

59.     Tesla has violated, and continues to violate, Section 17500 of the California Business and Professions Code by failing to disclose and disseminating untrue and misleading advertising to Plaintiff and the other members of the general public.

60.     Tesla has disseminated and continues to disseminate untrue and misleading advertising by knowingly and intentionally misleading Plaintiff and the public about the true nature of the driving range of the Tesla Vehicles.

61.     Tesla disseminated such untrue and misleading advertisements with the intent to induce Plaintiff and other members of the general public to purchase its vehicles.

62.     Tesla knew, or by the exercise of reasonable care should have known,

about the true nature of the vehicle range throughout the relevant period. Tesla should have disclosed accurate and truthful information concerning the vehicle range in its advertising and through its authorized dealerships.

63. Accordingly, Tesla was well aware of the false and misleading nature of its failure to disclose accurate and truthful information concerning the vehicle range.

64. Plaintiff reasonably relied on Tesla's representations and/or omissions made in connection with its vehicles. Plaintiff was induced to purchase a Tesla-branded product based on the belief that the purchased vehicle would have the driving range advertised by Tesla.

65. Tesla's representations and/or omissions made in connection with its Vehicles were likely to deceive reasonable consumers by obfuscating the true nature of the driving range.

66. Had Plaintiff known that the vehicle would not have the driving range as advertised, he would not have purchased his vehicle or would have paid less for it.

67. Plaintiff would consider purchasing or leasing similar Tesla vehicles in the future if Plaintiff could rely on Tesla's representations regarding the vehicles.

68. As a direct and proximate result of Tesla's untrue and misleading advertising, Tesla has improperly acquired money from Plaintiff.

69. Plaintiff brings this cause of action for public injunctive relief pursuant to Section 17535 of the California Business and Professions Code. Tesla's violations of Section 17500 are ongoing because it continues to advertise and engage in misrepresentations and failures to disclose to the public at large regarding its vehicle range, thus increasing the safety risk to the general public. Unless restrained by this Court, Tesla will continue to engage in untrue and misleading advertising, representations, and failures to disclose, as alleged above, in violation

of Section 17500. Accordingly, Plaintiff seeks an injunction enjoining Tesla from continuing to violate Section 17500.

### THIRD CAUSE OF ACTION

**(Violation of California Business & Professions Code §§ 17200, *et seq*.**
**(Unfair Business Practices- Injunctive Relief Only)**

70.    Plaintiff incorporates by reference the allegations contained in each and every paragraph of this Complaint.

71.    Tesla is a "person" as defined by California Business & Professions Code sections 17201, as it is a corporation, firm, partnership, joint stock company, and/or association.

72.    Tesla's conduct, as alleged herein, has been, and continues to be, unfair, and harmful to Plaintiff and to the general public. Plaintiff has suffered injury in fact as a result of Tesla's unfair business practices. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

73.    Tesla's activities, namely knowingly and intentionally misleading Plaintiff and the public about the true nature of the range of the Tesla Vehicles, has caused and will cause harm to Plaintiff and the general public. Tesla knew or reasonably should have known about the true nature of the vehicle range throughout the relevant period. Tesla should have disclosed accurate and truthful information concerning the vehicle range in its advertising and through its authorized dealerships. Tesla was in a superior position to know the true facts related to the vehicle range, and Plaintiff and the general public could not reasonably be expected to learn or discover the true facts related to the Tesla Vehicles' range.

74.    Plaintiff brings this cause of action for public injunctive relief pursuant to Section 17200, et seq., including Section 17203, of the California Business and Professions Code. Tesla's violations of Section 17200 are ongoing because it continues to advertise and engage in misrepresentations and failures to disclose to the public at large regarding its vehicle range, thus increasing the safety risk to the

general public. Unless restrained by this Court, Tesla will continue to engage in untrue and misleading advertising, representations, and failures to disclose, as alleged above, in violation of Section 17200. Accordingly, Plaintiff seeks an injunction enjoining Tesla from continuing to violate Section 17200.

## FOURTH CAUSE OF ACTION
### Violation of California Business & Professions Code §§ 17200, et seq.
### (Unlawful Business Practices - Injunctive Relief Only)

75.    Plaintiff incorporates by reference the allegations contained in each and every paragraph of this Complaint.

76.    Tesla is a "person" as defined by California Business & Professions Code section 17201, as it is a corporation, firm, partnership, joint stock company, and/or association.

77.    Tesla's conduct, as alleged herein, has been, and continues to be, unlawful, and harmful to Plaintiff and to the general public. Plaintiff has suffered injury in fact as a result of Tesla's unlawful business practices. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

78.    Tesla's activities, namely knowingly and intentionally misleading Plaintiff and the public about the true nature of the range of the Tesla Vehicles, have caused and will cause harm to Plaintiff and the purchasing general public.

79.    As stated, Tesla's failures are a violation of Cal. Civ. Code §§1770(a)(5), (7), & (9). Thus, Tesla's violations constitute an unlawful business practice in violation of California Business & Professions Code sections 17200, et seq.

80.    Plaintiff brings this cause of action for public injunctive relief pursuant to Section 17200, et seq., including Section 17203, of the California Business and Professions Code. Tesla's violations of Section 17200 are ongoing because it continues to advertise and engage in misrepresentations and failures to disclose to the public at large, thus increasing the safety risk to the general public. Unless

restrained by this Court, Tesla will continue to engage in untrue and misleading advertising, representations, and failures to disclose, as alleged above, in violation of Section 17200. Accordingly, Plaintiff seeks an injunction enjoining Tesla from continuing to violate Section 17200.

## PRAYER FOR RELIEF

81.    Plaintiff requests the Court to enter judgment against Tesla, as follows:

    a.  An order enjoining Tesla from continuing to violate California's Consumer Legal Remedies Act and Unfair Competition Law as described herein;

    b.  An order granting injunctive and declaratory relief to remedy Tesla's violations of California law, including but not limited to an order declaring the parties' respective legal rights and obligations and enjoining Tesla from continuing their unlawful and unfair business practices;

    c.  An award of attorneys' fees and costs, as permitted by law;

    d.  An award of attorneys' fees and costs pursuant to California Code of Civil Procedure section 1021.5; and

    e.  Leave to amend the Complaint to conform to the evidence produced at trial.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of any and all issues in this action so triable.

1    Dated:  December 18, 2023                 Respectfully submitted,

2                                             Capstone Law APC

3
                                          By: /s/ Tarek H. Zohdy
4                                             Tarek H. Zohdy
                                              Cody R. Padgett
5                                             Laura H. Goolsby

6                                             Attorneys for Plaintiff Raymond Flores

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT